**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | **Case No. 20-cr-00376-RDB-1** |
| **v.** | * | |
| | * | |
| **DEVON COBB** | * | |
| | * | |
| | * | |
| **Defendant** | * | |
| | ************ | |

<u>**MEMORANDUM OPINION AND ORDER OF COURT**</u>

This matter is before the Court on the defendant's Motion to Reopen Detention Hearing and Order Pretrial Release (the "Motion") (ECF No. 17), the defendant's Emergency Request to Rule Forthwith on Motion to Reopen Detention Hearing and Order Pretrial Release (the "Emergency Request") (ECF No. 20), the government's Response in Opposition to Defendant's Motion to Reopen Detention Hearing and Order Pretrial Release (the "Response') (ECF No. 22), and the defendant's Reply (the "Reply") (ECF No. 26). The issues have been fully briefed, and no hearing is necessary. L.R. 105.6, 207. For the reasons stated below, the Motion and Emergency Request are **DENIED**.

I. PROCEDURAL HISTORY

On November 4, 2020, a federal grand jury returned an indictment charging the defendant with Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1). The defendant appeared for his initial appearance on December 18, 2020. On December 21, 2020 the defendant appeared before this Court for a detention hearing.

II.  BAIL REFORM ACT

Pretrial detention and release are governed by the Bail Reform Act ("BRA").  18 U.S.C. §§ 3141 *et seq.*  The government is permitted to seek pretrial detention of the defendant in this case because the defendant is charged with a felony involving the possession of a firearm.  *Id.* § 3142(f)(1)(E).  The BRA requires the Court to order the pretrial release of the person "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community."  *Id.* § 3142(c)(1)(B).  If, however, the Court finds after a detention hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court "shall order the detention of the person before trial."  *Id.* § 3142(e)(1).  "The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."  *Id.* § 3142(f).  On the other hand, where risk of flight is the basis of a detention order, the government must prove by a preponderance of the evidence that no combination of conditions of release will reasonably assure the defendant's presence at future court proceedings.  *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including –

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.  REOPENING THE DETENTION HEARING

After hearing from the parties at the detention hearing, the Court reviewed the factors set forth in 18 U.S.C. § 3142(g) and found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.  Therefore, the Court ordered that the defendant be detained.  *See* Order of Detention Pending Trial (ECF No. 10).  The defendant is presently housed at the Chesapeake Detention Facility ("CDF") in Baltimore.  The defendant now moves to reopen the detention hearing.  Indeed, under 18 U.S.C. § 3142(f), a detention hearing

may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The defendant argues that the detention hearing should be reopened because information exists that was not known to him at the time of the detention hearing, and that this information has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance as required and the safety of any other person and the community.  The

3

defendant asserts that "[t]he coronavirus outbreak at CDF, which is especially dangerous for Mr. Cobb given his increased risk of severe illness from the disease, is a development that calls for the Court to reopen his detention hearing and order his immediate release." Motion (ECF. 17 at 7). Specifically, the defendant notes that he had asthma since childhood and asserts that his asthma increases his risk of severe illness from COVID-19. Motion (ECF No. 17 at 11). He then argues that, considering the new information, conditions of release can be fashioned to reasonably assure the safety of any other person and the community and that he should be released. The defendant does not assert that he has contracted COVID-19 while at CDF or that he has been exposed to anyone who has tested positive for the virus. He does not claim that he has not received adequate medical care while housed at CDF. Indeed, nearly 200 pages of medical records have been submitted to the Court. Although the records confirm that the defendant suffers from asthma, the defendant does not cite to anything in the records that indicates that he has not received an adequate level of medical care at CDF.

The Court acknowledges the recent increase in COVID-19-positive cases at CDF. According to the defendant, in the last month "more than a third of the jail's population [has] contracted the virus." Emergency Request (ECF No. 20 at 1). The Court finds that significant increase in COVID-19-positive cases at CDF in such a brief period of time constitutes new information that was not known to the defendant at the time of the detention hearing approximately seven weeks ago.

To reopen the detention hearing, however, the defendant must also establish that the new information has a *material* bearing on the issue whether conditions of release can be fashioned to reasonably assure the safety of any other person and the community. On this issue, the defendant argues that the current situation at CDF incentivizes his compliance with conditions of release to

4

the extent that his immediate release is justified.  "Considering the risks associated with his
(re)incarceration, the stringent conditions of home detention, electronic monitoring, and
appointment of a third party custodian provide reasonable assurance of community safety."
Motion (ECF No. 17 at 7).

In a recent case, United States District Judge Stephanie A. Gallagher addressed the issue
of the materiality of a defendant's medical condition in the context of the BRA factors.  She
stated:

> Congress carefully prescribed the factors that a court should consider in weighing
> whether a particular defendant should be detained or released before trial.  *See generally*
> 18 U.S.C. § 3142(g).  None of those factors refers specifically to the health of the
> defendant, or to whether the conditions of incarceration threaten the defendant's well-
> being.  Instead, Congress focused the required inquiry on the defendant's risk of
> nonappearance, and the danger that the defendant's release would pose to other
> individuals.  In some circumstances, clearly, a particular defendant's medical condition
> could reduce that defendant's risk of flight or danger to the community, and the health
> condition would therefore fall within the factors appropriately considered in the context
> of § 3142(g).  Absent those circumstances, however, a particular defendant's health
> conditions, and the possible risks posed to the defendant by incarceration, do not affect
> the § 3142(f) and (g) analysis.  *See, e.g.*, *United States v. Clark*, 2020 WL 1446895, at *3
> (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened
> COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis,
> which focuses on whether the court can fashion conditions of release that will reasonably
> assure the defendant is not a risk of nonappearance or a risk of harm to any others or the
> community.  The risk of harm *to the defendant* does not usually bear on this analysis.");
> *United States v. Lawton*, Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. April
> 27, 2020) (same); *United States v. Whyte*, Crim. No. 3:19-cr-64-1 (VLB), 2020 WL
> 1911187, at *4 (D. Conn. April 8, 2020) (analyzing medical conditions under § 3142(i));
> *United States v. Aguirre-Maldonado*, Crim. No. 20-cr-53 (NEB/TNL), 2020 WL
> 1809180, at *1 (D. Minn. April 9, 2020) ("While the Court appreciates the unprecedented
> nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic
> would reduce his risk of nonappearance or the risk that he poses to the community.");
> *United States v. Lee*, No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. March 30, 2020)
> ("[T]he relevant statutory inquiry [under § 3142(g)] is *not* the benefits that a defendant's
> release would bring about (however significant) or the harms that his incarceration would
> cause (however substantial).  Rather, the statute requires the Court to evaluate "*the
> danger*" that "would be posed *by the person's release*.") (emphasis in original).

*United States v. Gallagher*, Criminal No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (alteration in original).

Arguably, the defendant has made out a *prima facie* case on the issue of materiality – that he has an incentive to abide by conditions of release to avoid being returned to jail if he violates. Therefore, the Court will go forward and engage in a *de novo* review of the factors set forth in 18 U.S.C. § 3142(g), including the new information, to determine if there are conditions of release that could be fashioned to reasonably assure the safety of any other person and the community if he is released.

Regarding the nature and circumstances of the offense charged, the defendant is charged with an offense involving a firearm. *See* 18 U.S.C. § 3142(g)(1). Regarding the weight of the evidence against the defendant, the Court finds that the weight of the evidence against the defendant is strong. At the detention hearing on December 21, 2020, the government proffered the following facts. On June 24, 2020, law enforcement officers were monitoring the defendant's Instagram Live account. The video showed the defendant driving a vehicle with a passenger. Both the defendant and the passenger were observed in the possession of firearms. The officers recognized the area where the defendant was driving. Officers responded to that area and observed the defendant and his passenger in the vehicle. As officers approached the vehicle on foot, the defendant sped off the wrong way on a one-way street. While fleeing, the defendant struck one of the officers. That officer was injured and required shoulder surgery. As the defendant was speeding the wrong way down the one-way street, his vehicle entered an intersection and struck another vehicle in the intersection, flipping that car over. An adult and a child were in the vehicle that flipped over. Fortunately, neither was seriously injured. After the crash, the defendant fled on foot, but he was apprehended several blocks away. The officers

recovered a semi-automatic pistol with one round in the chamber and 24 rounds in the magazine from the floor of the driver's seat of the defendant's car, matching the one the defendant was holding in the video.  The officers found $4,155.00 in small bills and marijuana packaging materials in the vehicle.  After the incident the defendant made several jail calls in which he discussed the incident.  The government's evidence includes the Instagram Live video, body camera recordings, and the jail calls.  *See id.* § 3142(g)(2).

Regarding the history and characteristics of the defendant, the Court reviewed the Pretrial Services report and the Addendum thereto that summarized the defendant's residential history and family ties, his employment history and financial resources, his health, and his criminal record.  The defendant's criminal record is significant.  Among his prior convictions are three convictions for felony CDS offenses and a conviction for second-degree assault.[1]  Although he has never been found in violation of probation, it appears that the second felony CDS offense occurred while he was on probation for the first.  He was sentenced to a period of incarceration of two days on the second felony CDS offense and about four months' incarceration on the third.  His eight-month sentence on the second-degree assault charge was suspended.  Further, there is an active warrant on file for another felony CDS offense.  At the time of the instant offense, his driver's license was revoked and suspended.  *See id.* § 3142(g)(3).

Finally, regarding the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release, the Court finds that the defendant would pose a serious danger to the community if released on the basis of several factors, including the serious facts in this case, his prior record for felony CDS offenses and second-degree assault, the commission  of criminal acts after serving periods of incarceration, and the

---

[1] He was granted Probation Before Judgment on the first offense.

fact that he was prohibited from driving a vehicle on the day of the instant offense.  *See id.* § 3142(g)(4).

The Court now considers whether there is a condition or combination of conditions of release that will reasonably assure the safety of any other person and the community if he is released.  The defendant proposes a release plan that includes home detention, electronic monitoring, and the appointment of a third-party custodian.  To give the Court confidence that he will abide by conditions of release, the defendant asserts that the threat of being returned to detention if he violates a condition of release is so great that the Court has the reasonable assurance that it must find that the community will be safe if the defendant is released.  The Court is not so persuaded, however.  Prior convictions for serious offenses and periods of incarceration did not deter the defendant from committing further criminal acts, including the alleged instant offense.  Here, the defendant brazenly posted a video of his driving in real time a vehicle (when he was prohibited from driving) while in possession of a loaded pistol with 24 rounds in the magazine (when he was prohibited from possessing a firearm).  When approached by the police, he sped off the wrong way down a one-way street, injuring an officer who was on foot and colliding with a car in an intersection, flipping that car over.  He then fled on foot.  In addition to the loaded pistol, he was in possession of $4,155.00 in small bills and marijuana packaging material.  The defendant's cavalier attitude toward the law, past and present, gives the Court little confidence that he has any incentive to abide by conditions of release if imposed.

After reviewing *de novo* the § 3142(g) factors, including the new information regarding the recent increase in COVID-19 cases at CDF and the potential health risk the defendant faces as a consequence thereof, the Court affirms its prior finding by clear and convincing evidence

that no condition or combination of conditions will reasonably assure the safety of any other person and the community if the defendant is released.

Although each case must be decided on its own particular facts and after an individualized assessment of the § 3142(g) factors, the Court notes the following recent decisions of this Court denying requests for release from defendants suffering from health conditions similar to the defendant's. *See, e.g.*, *United States v. Wheeler*, Criminal Case No. CCB-19-0455, 2020 WL 2085473 (D. Md. Apr. 30, 2020) (asthma, COVID-19, diabetes); *United States v. Green*, Criminal Case No. CCB-19-0539-1, 2020 WL 1873967 (D. Md. Apr. 15, 2020) (asthma, high blood pressure, chronic obstructive pulmonary disease); *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020) (diabetes, high blood pressure, asthma).

## IV.  TEMPORARY RELEASE UNDER § 3142(i)

The Court will also consider whether temporary release under the provisions of 18 U.S.C. § 3142(i) is justified.  Under 18 U.S.C. § 3142(i), the Court "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."[2]

Regarding whether the defendant has established "another compelling reason" for temporary release, the Fourth Circuit has directed the Court to

> consider in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk,

---

[2] The defendant asserts that, because of the restrictions in place at CDF, he has limited access to counsel as legal calls and video visits have been suspended.  *See* Emergency Request (ECF No. 20 at 3).  The Court recently has learned, however, that cell phones have become available to facilitate communications with counsel.  Therefore, temporary release is not ordered on that basis.

balanced against the other Bail Reform Act factors, rises to the level of a
"compelling reason" for temporary release under 18 U.S.C. § 3142(i).

*United States v. Creek*, No. 20-4251, Order at 1 (4th Cir. Apr. 15, 2020).

The first factor to consider is the severity of the risk that the COVID-19 virus poses to the
defendant.  As recognized earlier, the defendant suffers from asthma.  According to the Centers
for Disease Control and Prevention (the "CDC"), adults of any age with asthma "**might be at an
increased risk** for severe illness from the virus that causes COVID-19."  *Certain Medical
Conditions and Risk for Severe COVID-19 Illness*, Ctrs. for Disease Control & Prevention (Feb.
3, 2021), [https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html/](https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html/).  Notably, the CDC does not consider that asthma sufferers *are* at
increased risk, just that they *might* be.  In any event, the defendant neither alleges nor points to
anything in his medical records that establishes that he has not received proper treatment for his
asthma or that he has suffered any complications because of the COVID-19 virus.

The risk to the defendant based on his medical condition must now be evaluated in the
context of the current COVID-19 situation at CDF.  The Court acknowledges the significant
increase in the number of COVID-19-positive cases at CDF in recent weeks.  That is undisputed.
The government, however, outlines the increased preventive measures instituted at CDF to
mitigate the spread of the virus and protect the detainees and staff.  *See* Response (ECF No. 22 at
11-14).  The risk that the COVID-19 virus poses to the defendant, given his asthma and the
current conditions at CDF, is difficult to quantify.  Logically, the greater the number of people
who have contracted the virus to whom the defendant is exposed, the greater the chance that he
will contract it.  If he does contract it, however, it is not certain that he will suffer severe
consequences, as the CDC has concluded that someone with asthma might be at an increased risk
for severe illness.  Further, to this point, notwithstanding the significant increase in positive cases

at CDF, the defendant has not contracted the virus.  Arguably the preventive measures recently implemented at CDF have been effective to protect the defendant from contracting the disease. The defendant's argument rests primarily on a generalized risk of exposure and contraction of COVID-19 because of the recent increase in positive cases at CDF.  He does not, however, offer any individualized assessment that he is at any greater risk than any other detainee who may suffer from a condition that may put them at an increased risk for severe illness from the virus.

Finally, under the Fourth Circuit's directive in *Creek*, the Court must address whether the risk that the COVID-19 virus poses to the defendant, given his existing medical condition and the current COVID-19 situation at CDF, balanced against the other BRA factors, rises to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).  The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist. *United States v. Sanders*, 450 F. Supp. 3d 1123, 1127 (D. Kan. 2020).  "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion."  *United States v. Hernandez*, No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).  Given the Court's original finding by clear and convincing evidence that there are no condition or combination of conditions of release that would reasonably assure the safety of any other person and the community and the grounds upon which that finding was based, the Court finds that, balanced against the other BRA factors, the risk that the COVID-19 virus poses to the defendant, given his existing medical condition and current COVID-19 situation at CDF, does not rise to the level of a "compelling reason" for temporary release under 18 U.S.C. § 3142(i).

V.  CONCLUSION

For the reasons stated above, although the defendant has presented new information that arguably has a material bearing on the issue of release or detention, after reviewing the § 3142(g) factors *de novo* considering the new information, the Court affirms its prior finding of detention. Further, the Court finds that the defendant has not established a basis for temporary release under § 3142(i).  Finally, the Court declines the request to order a site inspection of CDF.

## **ORDER**

Accordingly, it is this 12th day of February 2021, hereby **ORDERED** that the defendant's Motion to Reopen Detention Hearing and Order Pretrial Release (ECF No. 17) and Emergency Request to Rule Forthwith on Motion to Reopen Detention Hearing and Order Pretrial Release (ECF No. 20) are **DENIED**.

_____/s/_____
Thomas M. DiGirolamo
United States Magistrate Judge